**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | |
|---|---|
| SANDRA IMMERSO,<br>           Plaintiff,<br><br>           v.<br><br>U.S. DEPARTMENT OF LABOR,<br>           Defendant. | Case No. 1:19-cv-03777-NGG-VMS |

**RESPONSE TO ORDER TO SHOW CAUSE WHY**
**COUNSEL SHOULD NOT BE REFERRED FOR DISCIPLINE FOR**
**EXPOSING JUDGE GARAUFIS'S CRIMINAL OBSTRUCTION OF JUSTICE (LYING,**
**CONCEALING EVIDENCE AND**
**RETALIATING AGAINST PLAINTIFF AND COUNSEL)**

Plaintiff's counsel, Jack Jordan, respectfully submits this Response to the Minute Order of Judge Garaufis dated July 28, 2021 (the "**Minute Order**") "to show cause [ ] as to why" Jordan "should not be referred to the Disciplinary Committee for this District" for *something* that Judge Gaurafis failed to even identify "in connection with" the "Notice of Noncompliance" (ECF 102) with Judge Garaufis's order dated July 28, 2021 (ECF 101) illegally and criminally imposing sanctions (the "**Order**").

I.      **Judge Garaufis Failed to Give Notice and Opportunity to Respond Regarding any Potential Reason for Discipline.**

One reason Judge Garaufis's proposed referral is inappropriate is that Jordan (and apparently even Judge Garaufis) have no idea why Jordan would be referred to the Disciplinary Committee "in connection with" Jordan's "Notice of Noncompliance."  Minute Order.  Judge Garaufis failed to give Jordan any notice whatsoever of even any rule of conduct that the Notice of Noncompliance might have violated.  *See id*.  Judge Garaufis failed to give Jordan any notice of any fact or evidence whatsoever that even had the potential to show that Jordan violated any rule of conduct "in connection with" the "Notice of Noncompliance."  *Id*.

To date (including in the Order and in the Minute Order), Judge Garaufis has failed to even deny that he did lie or commit crimes exactly as Jordan asserted.  Judge Garaufis failed to even state any fact that had the potential to show that he did not lie or commit crimes, exactly as Jordan asserted in the Notice of Noncompliance and below.

"The [fact of] silence of one who should speak may well create an inference adverse to him." *United States v. Mammoth Oil Co*., 14 F.2d 705, 730 (8th Cir. 1926), *aff'd*, 275 U.S. 13 (1927).  "It is incredible that [any high government] official" such as Judge Garaufis and attorneys of the U.S. Department of  Justice ("**DOJ**") when accused of crimes "in connection with" their "official duty in matters where great public interests are concerned, would not be quick to refute the same. Men [and women] with honest motives and purposes do not remain silent when their honor is assailed." *Id.* at 729.

If they told the truth, they would produce the proof—especially when it is as easy as releasing the relevant parts of Powers' email.  They need only release evidence proving that they did not lie when they represented that on July 30, 2013, Darin Powers included in Powers' email (**1**) the notation "Subject to Attorney Client Privilege" and (**2**) an express request for advice, input or review (*e.g*., "please advise regarding" or "please review and provide input").  Instead of doing so, Judge Garaufis and DOJ attorneys have wasted years of their time and many dozens of pages concealing and attempting to justify concealing such evidence. Having failed to support their lies or justify their crimes, they have turned to criminal intimidation and threats.  *See*, *e.g.*, Order; Minute Order.

## II.    Judge Garaufis Did Assert the Lies and Commit the Crimes Jordan Addressed in the Notice of Noncompliance.

Despite the following controlling legal authority (which Judge Garaufis knew controlled), he relied on mere conclusory contentions and lies in which he asserted sweeping

characterizations (which Judge Garaufis *knew* were false) about *entire filings* by Jordan being meritless or frivolous.  *See* Order at 5-6.  Judge Garaufis's lies were founded on nothing more than quicksand.  He repeatedly purported to justify his lies about Jordan's filings by emphasizing merely that Judge Garaufis merely "rejected" controlling legal authority in federal law, precedent and the Constitution.  Order at 6, 9, 10. That is evidence that Judge Garaufis's orders were meritless and frivolous, not that Plaintiff's filings were meritless or frivolous.

Judge Garaufis's contentions that filings by Jordan were meritless or frivolous were lies. As used herein, "**lie**" means a knowing and willful falsehood.  "Knowing" means the attorney or judge knew the relevant "facts."  *Bryan v. United States*, 524 U.S. 184, 193 (1998).  "Willful" means he acted "with an evil-meaning mind," *i.e*., "with knowledge that his conduct was unlawful."  *Id*.

Judge Garaufis and DOJ attorneys knew and know that many of their contentions were false.  It is well settled that their guilty knowledge may be established with evidence that they were "willfully blind," *i.e*., they took "deliberate actions to avoid confirming a high probability of wrongdoing."  *Global-Tech Appliances, Inc. v. SEB S.A*., 563 U.S. 754, 769 (2011).  Evidence that they were "aware of a high probability" of "the existence of a particular fact" but "*decided* not to learn the key fact" proves "*conscious* avoidance."  *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993).

Judge Garaufis *knew* the following.  He *knew* the Order violated Jordan's and Plaintiff's rights to due process of law.  He knew any "inherent power" he might have to impose sanctions "must be exercised with restraint and discretion."  Order at 7 quoting *Int'l Techs. Marketing Inc. v. Verint Sys., Ltd*., 991 F.3d 361, 368 (2d Cir. 2021) (quoting *Chambers v. NASCO, Inc*., 501

U.S. 32, 44 (1991)).  Judge Garaufis knew that Second Circuit and Supreme Court precedent required both restraint and discretion, but Judge Garaufis clearly failed to exercise either.

Judge Garaufis knew the required restraint and discretion meant, in part, that "[b]efore imposing sanctions, the court *must* afford" Jordan and Plaintiff "due process," which necessarily included "*notice* and *opportunity to be heard*." Order at 7 quoting *Mickle v. Morin*, 297 F.3d 114, 126 (2d Cir. 2002) (emphasis added).

Judge Garaufis also knew the restraint and discretion required above and the notice and opportunity required above meant, in part, that any "award of sanctions under" his "inherent power *must* be based on *clear evidence* and *must* be *accompanied* by a *high degree of specificity* in the *factual findings*."  Order at 7 quoting *Mickle* at 125-26 (emphasis added).

Judge Garaufis knew the required restraint and discretion meant, in part, that to impose the sanctions he did he "*must* find *clear evidence* that (1)" Plaintiff's or Jordan's "claims were *entirely without color*, and (2) [such] claims were brought *in bad faith*—that is, *motivated by improper purposes* such as harassment or delay." Oder at 8 quoting *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018).  Judge Garaufis knew the required restraint and discretion meant, in part, that he could "infer bad faith '*only* if" Jordan's "actions" were "*completely* without merit." Order at 9 quoting *Emmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (emphasis added).

Judge Garaufis's own Order proved that he knowingly and willfully (criminally) violated all the foregoing due process protections.  Despite the foregoing clear requirements of controlling legal authority, Judge Garaufis and the DOJ attorneys failed (before, in or after the Order) to identify *even one assertion* by Jordan in *even one filing* that was false or contrary to federal law.  Judge Garuaufis and the DOJ attorneys who sought sanctions failed (before, in or

after the Order) to identify any *evidence* that *even one assertion* by Jordan in *even one filing* was false or contrary to federal law.  They *did not* (for years) and they *cannot* (ever) do so.

Instead of basing his Order on clear evidence, Judge Garaufis criminally concealed and helped employees of the DOJ and the U.S. Department of Labor ("**DOL**") criminally conceal clear evidence.  Judge Garaufis *knowingly* violated Second Circuit and Supreme Court precedent and the Constitution (and Jordan's and Plaintiff's rights thereunder) to illegally and criminally impose sanctions.  Judge Garaufis did so to help DOL and DOJ employees conceal clear evidence that they and Judge Garaufis lied and committed other crimes to conceal relevant evidence and material facts.  They lied and committed crimes to conceal evidence that on July 30, 2013, Darin Powers did not include in Powers' email **(1)** the notation "Subject to Attorney Client Privilege" and **(2)** an *express* request for *legal* advice from a particular attorney (*e.g.*, "please advise regarding" or "please review and provide input").

To justify lies about and criminally concealing the portions of Powers' email showing that DOL and DOJ attorneys lied about such portions, Judge Garaufis asserted mere hearsay (including *his own*) that was not even supported by *any* competent evidence or testimony by *any* competent witness.  *Cf.* FED.R.EVID. 602, 605, 802; FED.R.CIV.P. 43, 56(c)(4), (h).  In a blatant and fraudulent sham, Judge Garaufis, *personally*, asserted particular contentions to *personally* purport to bear the DOL's burden to show that Rule 56 *required* judgment for the DOL and that the DOL's motion to dismiss was not frivolous. Judge Garaufis lied and *knowingly* violated Federal Rules of Civil Procedure, Federal Rules of Evidence and the Constitution.

First, Judge Garaufis deceitfully and frivolously asserted the following hearsay (which he knew was false lacked *any* evidentiary support):  "*In the email*, *Powers asked Bellomy to review* the developments and strategies and to *provide any relevant legal advice.*"  Dkt. 64 (11/20/2020)

at 2 (emphasis added).  Second, Judge Garaufis merely parroted the DOL and DOJ employees

mere hearsay (not supported by any declaration based on, much less showing, personal

knowledge) that "[t]he email was marked" (by somebody sometime between July 30, 2013 and

about November 2019) "Subject to Attorney Client Privilege."  *Id*.  Even if the contentions about

the privilege notation were not lies, Judge Garaufis and the DOJ attorneys knew there was no

evidence (and not even any *contention* by *any* DOL or DynCorp employee) that *Powers, himself*,

marked Powers' email with any such notation *on July 30, 2013*.[1]

    After Judge Garaufis asserted the foregoing to pretend to show that the DOL satisfied the

demanding requirements of Rule 56 (proof beyond genuine dispute), he lied as blatantly as he

could.  He contended that the foregoing two phrases were, in fact, mere "meaningless

information."  Dkt. 64 at 16.[2]  Whatever the words used (or not used) by Powers might have

been, their presence or absence (now or on July 30, 2013) *cannot* be meaningless—and Judge

Garaufis and the DOJ attorneys *knew* that.  Each of them *knew* such evidence proves that DOL

───────────────

[1] It may be true that *some unidentified person some unidentified time after* June 30, 2013 *altered*
Powers' email by marking it "Subject to Attorney Client Privilege" to deceitfully influence the
outcome of judicial and agency proceedings.  But altering the record or using the altered record
to influence court or agency proceedings would be criminal, and concealing the material facts
would be equally criminal.  *See, e.g.*, 18 U.S.C. §§ 1519, 1001(a)(1), (3).

[2] To justify requesting sanctions against Plaintiff and her counsel, DOJ attorneys also lied at least
as blatantly as Judge Garaufis.  Having read Powers' email, they lied about the materiality of the
fact that the two phrases at issue were not included by Powers in Powers' email on July 30, 2013.
On December 11, 2020, AUSA Mahoney and Acting U.S. Attorney DuCharme essentially
admitted that, for the past two years, AUSA Mahoney lied and criminally concealed and help
DOL employees criminally conceal especially material facts regarding especially relevant
evidence.  They emphasized and insisted that any purported request for advice or input really
was nothing more than "meaningless words."  Dkt. 71-1 at 24 (Motion for Sanctions).  Such
admission—together with Judge Garaufis's own statements of the law governing sanctionable
filings, above, and the information and analysis in Plaintiff's Opposition to the DOL/DOJ
sanctions motion—established that Judge Garaufis *knew* that the DOL's sanctions motion was
*entirely* frivolous and meritless and even fraudulent.

and DOJ employees lied about or deceitfully misrepresented Powers' actions on July 30, 2013 to

criminally conceal the evidence of DynCorp, DOL and DOJ employees' or counsels' lies and

deceit to undermine the integrity of multiple judicial and DOL and DOJ proceedings.

Judge Garaufis asserted his lies, above, to justify knowingly (criminally) violating FOIA,

Second Circuit precedent, the Supremacy Clause and the Due Process Clause and Plaintiff's

rights thereunder.

Judge Garaufis expressly admitted that he "will not direct" the DOL "to disclose" to

Plaintiff evidence of the two phrases purportedly in Powers' email "simply so that Plaintiff can

test the veracity of DOL's representations." Dkt. 64 at 16. Preventing Plaintiff from testing the

veracity of DOL and DOJ employees lies and deceit was Judge Garaufis's express *reason* for

violating Plaintiff's rights under FOIA and the Constitution and personally concealing and

helping DOL and DOJ employees conceal evidence of the presence or absence of the two

phrases at issue. For more than a year, Judge Garaufis has deliberately concealed and helped the

DOL and DOJ conceal evidence of DOL and DOJ employees' lies and deceit to undermine the

integrity of many judicial and agency proceedings.

Judge Garaufis did so promptly after and even though he clearly proved that he *knew* that

"the agency is required" by FOIA and precedent "to disclose non-exempt portions of the record"

unless the DOL proves (beyond genuine dispute) that they are "*inextricably* intertwined with

exempt information." Dkt. 64 at 15 quoting *Inner City Press/Cmty. on the Move v. Bd. of

Governors of Fed. Rsrv. Sys.*, 463 F.3d 239, 243 n.10 (2d Cir. 2006) (emphasis added). Judge

Garaufis knew that *Inner City* applied a particular FOIA command which "requires that the

relevant agency disclose '[a]ny *reasonably segregable portion* of a record" to "*any* person

7

requesting such record after deletion of the portions which are exempt." Dkt. 64 at 15 quoting 5 U.S.C. § 552(b) (emphasis added).

Judge Garaufis and all relevant DOL and DOJ employees knew that any words that they *quoted* ("Subject to Attorney Client Privilege") and any *non-commercial* words in any *express* request (*e.g*., "please advise regarding" or "please review and provide input") *could not possibly* be privileged, confidential, commercial or inextricably intertwined with any such information. The DOL and DOJ attorneys and Judge Garaufis plainly and simply suggested, sought and imposed sanctions to help criminally conceal evidence that DOL and DOJ employees and Judge Garaufis lied about or deceitfully misrepresented what the DOL proved to comply with Rule 56 or about what Powers wrote in or on Powers' email on July 30, 2013.

Judge Garaufis even emphasized the purpose of his sanctions was to help DOJ and DOL employees criminally conceal such evidence.  "Virtually all of Plaintiff's motions seek the same relief that [Judge Garaufis] has repeatedly declined to grant – the compelled disclosure of redacted portions of the Powers email" showing only the two phrases at issue above.  Order at 10.

The only actions that truly ever were necessary to put an end to Plaintiff's filings (for which Judge Garaufis sanctioned Plaintiff and Jordan) were for DOL and DOJ employees and Judge Garaufis to cease criminally concealing the evidence proving the truth or falsity of the public disclosures and contentions DOL and DOJ employees and Judge Garaufis about Powers' email.  They needed to do nothing more than release evidence proving whether on July 30, 2013, Darin Powers included in Powers' email only the two following phrases:  **(1)** the notation "Subject to Attorney Client Privilege" or **(2)** any express request for advice, input or review from a particular attorney (*e.g.*, "please advise regarding" or "please review and provide input").

8

Instead of revealing (or ordering the DOL or DOJ to reveal) minimal evidence of two (supposedly) innocuous phrases, above, Judge Garaufis purported to impose numerous far-reaching sanctions (*see* Order at 14-15) to help himself and DOL and DOJ employees conceal evidence of the two phrases that no such person could reasonably or rationally wish to conceal—unless the evidence proves government employees lied and committed other crimes.

When such "strong" evidence (the parts of Powers' email showing the two phrases) is available but it is concealed, such conduct "can lead *only* to the conclusion that [such evidence] would have been adverse." *Interstate Circuit v. United States*, 306 U.S. 208, 226 (1939) (emphasis added). The act of concealing such evidence is evidence of deceit. "Silence" regarding material facts (including the precise non-commercial words used to state any request at issue) is "evidence" that DOL and DOJ employees and Judge Garaufis acted in bad faith and deceitfully and it is "most convincing." *Id*. "Conduct which forms a basis for inference is evidence. Silence is often," as it is here, "most persuasive" and compelling "evidence" of deceit and bad faith. *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923).

Such circumstantial evidence is "intrinsically no different from testimonial evidence." *Holland v. United States*, 348 U.S. 121, 140 (1954). The actions of DOJ and DOL employees and Judge Garaufis speak for them, and they say, "We lied and we are knowingly violating Plaintiff's and Jordan's rights under the Constitution and federal law." Such "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc., v. Costa*, 539 U.S. 90, 100 (2003). The Supreme Court has "never questioned the sufficiency of circumstantial evidence in support of [even] a criminal conviction, even though proof beyond a reasonable doubt is required." *Id*.

Judge Garaufis's sanctions were not only illegal, they were criminal.  Judge Garaufis *knew*—and did not even deny that he knew—his conduct was and is criminal.  *See* Order at 11-12, n.6.

It was and is a crime for any DOJ or DOL employee (or Judge Garaufis) to personally conceal evidence of the presence or absence of the two phrases, above, in Powers' email (or for anyone to alter Powers' email, *e.g.*, by marking it with a privilege notation) with "the intent to *impede, obstruct, or influence* the investigation or proper administration of *any* matter within" DOL or DOJ "jurisdiction" or "in *relation* to or *contemplation* of *any* such matter," including in any agency or court proceeding pertaining to Powers' email. **18 U.S.C. § 1519** (emphasis added). But that is what Judge Garaufis and DOJ and DOJ employees have done for more than a year. That is what they are continuing to do, including by means of seeking and imposing sanctions.

It also was and is a crime for Judge Garaufis to "knowingly and willfully" use any "trick, scheme, or device" to falsify a "material fact." **18 U.S.C. § 1001(a)(1)**.  It was and is a crime for Judge Garaufis to "knowingly and willfully" make "any materially false, fictitious, or fraudulent statement or representation."  *Id*. **§ 1001(a)(2)**.  A "party" or "party's counsel" are exempt from Section 1001(a) (but only "for statements, representations, writings or documents submitted" to a federal "judge"), so statements by Judge Garaufis clearly are not exempt, and concealing evidence (by any judge or any DOL or DOJ employee) is not exempt.  *Id*. § 1001(b).

It was and is a crime for Judge Garaufis to "conspire" with any DOJ or DOL employee "either to commit any offense against the United States, or to defraud the United States, or any agency thereof in *any* manner or for *any* purpose."  **18 U.S.C. § 371** (emphasis added).  But criminally conspiring is exactly what Judge Garaufis and the DOJ attorneys did and are doing.

10

The "broad language" above "puts no limits based on the *method* used to defraud." *Tanner v. United States*, 483 U.S. 107, 129 (1987). "To conspire to defraud the" U.S. includes "to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *Hammerschmidt v. United States*, 265 U.S. 182, 187 (1924). "It is not necessary that the" U.S. suffer "property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention." *Id*.

Criminal conspiracy means "two or more persons entered into a joint enterprise for an unlawful purpose, with awareness of its general nature and extent." *United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010). A conspirator need only "in some sense promote [the illegal] venture himself" or "make it his own." *United States v. Falcone*, 109 F.2d 579, 581 (2d Cir.1940) (L. Hand, J.), *aff'd* 311 U.S. 205 (1940). There must be only "some indication that" he "knew of and intended to further the illegal venture" or "that he somehow encouraged the illegal use" of something. *United States v. Zambrano,* 776 F.2d 1091, 1095 (2d Cir. 1985). "Accordingly," if "at least two persons have a shared purpose or stake in the promotion of an illegal objective, there is" a "conspiracy." *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009).

"As a literal matter, when" any DOJ attorney asked Judge Garaufis (or when Judge Garaufis asks other court employees involved in attorney discipline) to do something to *knowingly* violate any person's rights under the Constitution or federal law and Judge Garaufis or the Disciplinary Committee did so or does so, "two persons have agreed to a concerted effort to achieve the unlawful" objective. *Id*. *See also United States v. Rahme*, 813 F.2d 31, 35-36 (2d Cir. 1987) (examples of statements in furtherance of a conspiracy).

11

As Plaintiff repeatedly has emphasized in repeated briefing to Judge Garaufis, no government employee may "make" any "law" that abridges "the freedom of speech" or "the right of the people" to "petition" this Court "for a redress of grievances," including by filing motions and oppositions to motions. U.S. Const. Amend. I. "No person" may "be deprived of" any "liberty" or "property" whatsoever "without due process of law." Amend. V.  In every FOIA case, the "Constitution, and" federal "Laws" created "in Pursuance" of the Constitution "shall be the supreme Law of the Land" and all "Judges" at all times are "bound thereby."  Art. VI, cl. 2.

It is a crime for any DOJ attorney or judge to act "under color of any" legal authority (*i.e.*, use an official position) to "willfully" deprive any person (including any FOIA requester) "of any rights, privileges, or immunities secured or protected by the Constitution" or any federal "laws" (including federal statutes or federal rules of procedure or evidence). **18 U.S.C. § 242**.  It is a crime for any "two or more" agency employees to "conspire" together or with Judge Garaufis to "injure, oppress, threaten, or intimidate" any person "in the free exercise or enjoyment of any right or privilege secured to" him "by the Constitution" or federal "laws," or because any person exercised any such right. **18 U.S.C. § 241**.

"Both" Section 241 and 242 cover all "rights or privileges secured by the Constitution" or federal "laws." *United States v. Price*, 383 U.S. 787, 797 (1966). "Neither is qualified or limited." *Id*. "Even judges" can "be punished criminally for willful deprivations of constitutional rights."  *Imbler v. Pachtman*, 424 U.S. 409, 429 (1976).  DOJ attorneys and Judge Garaufis clearly committed crimes in 18 U.S.C. §§ 241, 242 and 371 by means of the Order and seeking or threatening sanctions.

Judge Garaufis's sanctions were designed to help him and DOL and DOJ employees criminally conceal evidence (of the presence or absence of two phrases in Powers' email).  Such

sanctions were designed to injure, oppress and intimidate Plaintiff and Jordan because they exercised their rights under FOIA, the APA and the U.S. Constitution and Federal Rules of Civil Procedure to obtain such evidence.  Such sanctions were knowingly and intentionally illegal and criminal.

### III.   Judge Garaufis's Order and Threat of Discipline Constitute Criminal Intimidation and Threats.

It is a crime for Judge Garaufis to "conspire" with anyone to "injure, oppress, threaten, or intimidate" Jordan or Plaintiff "in the free exercise or enjoyment of any right or privilege secured to" him "by the Constitution" or federal "laws," or because Jordan exercised any such right.  **18 U.S.C. § 241**.

It is a crime for Judge Garaufis to "knowingly" use "intimidation" or to "threaten[ ]," Jordan or Plaintiff or even "attempt[ ] to do so" "with intent" to "hinder, delay, or prevent the communication" by Jordan or Plaintiff to any federal "judge" (including Judge Garaufis or the Second Circuit) of "information relating to" even the "possible commission of" any "Federal offense."  **18 U.S.C. § 1512(b).**  Every legal proceeding pertaining to Powers' email was such an "official proceeding," including any "proceeding before" any federal "judge or court." 18 U.S.C. § 1512(c)(1).

Here, Judge Garaufis is threatening to use other court employees and intimidating Jordan because Jordan has exposed lies and crimes (federal offenses) of Judge Garaufis and DOL and DOJ employees in this case, which was and is Jordan's constitutional right.

"Congress shall make no law" (and therefore no court created and empowered by Congress) could take any action "abridging" any "right of the people" to "petition the Government for a redress of grievances" in federal court.  U.S. Const., Amend. I.  That necessarily includes making the filings Jordan has made in this case.  The Constitution

emphatically and categorically prohibited *any* government employee from depriving *any* "person" of *any* "liberty" or "property" without *full* "due process of *law*." Amend. V (emphasis added).  Due process of law requires Judge Garaufis to show *facts by clear and convincing evidence* proving that Jordan said something *false* about Judge Garaufis.  For more than a year, Judge Garaufis failed to do so, and he cannot ever do so.  He does not even try.

"Speech by professionals obviously has many dimensions. There are circumstances in which" courts must "accord speech by attorneys on public issues and matters of legal representation the strongest protection our Constitution has to offer."  *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 634 (1995).  The U.S. Supreme Court repeatedly has emphasized that any prohibition or punishment of attorney speech or petitioning in judicial proceedings "must withstand [ ] exacting scrutiny" when it is imposes "limitations on core First Amendment rights." *In re Primus*, 436 U.S. 412, 432 (1978) quoting *Buckley v. Valeo*, 424 U.S. 1, 44-45 (1976).

Shortly before and long after *Sullivan*, the U.S. Supreme Court repeatedly emphasized that "[t]he First and Fourteenth Amendments require a [particular] measure of protection" for attorneys and parties "advocating lawful means of vindicating legal rights."  *Primus* at 432 quoting *NAACP v. Button*, 371 U.S. 415, 437 (1963).  A month after deciding *Sullivan*, the U.S. Supreme Court emphasized that courts cannot merely "by invoking the power to regulate" the "conduct of attorneys" essentially "infringe in any way the" First Amendment "right of individuals and the public" to act, speak and petition to "effectuate a basic public interest." *Brotherhood of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 7 (1964).

All courts must "provide the safeguards for freedom of speech" required by the First Amendment regarding criticism of any "public official" for any "official conduct."  *Sullivan*, 376 U.S. at 264.  *See also id*. at 268-76, 281-83 (scope of the freedom of speech to criticize public

14

officials for official conduct).  "It is as much" an attorney's "duty to criticize" judges' violations of law "as it is" judges' "duty to administer" the law.  *Id*. at 282.  "The knowledge that" court proceedings are "subject to contemporaneous review in the forum of public opinion is an effective" and vital "restraint on possible abuse of judicial power."  *In re Oliver*, 333 U.S. 257, 270 (1948).  Or at least it is meant to be such a restraint.

Americans have a "privilege" for "criticism of official conduct" necessarily "analogous to the protection accorded a public official" with "immunity" for "libel."  *Sullivan,* 376 U.S. at 282.  "Analogous considerations support the privilege for the citizen-critic of government. It is as much his duty to criticize as it is the official's duty to administer."  *Id*.  "It would give public servants an unjustified preference over the public they serve, if critics of official conduct did not have a fair equivalent of the immunity granted to the officials themselves."  *Id*. at 282-83.  "[S]uch a privilege is required by the First and Fourteenth Amendments."  *Id*. at 283.

The "Constitution delimits" any governmental "power" to punish "critics" of "public officials" for "their official conduct" so "the rule requiring" clear and convincing "proof of" falsity and "actual malice is applicable" to all such attempts.  *Id*. at 283.  The Court specifically emphasized that "[i]n deciding the question now," it gave no "more weight to the epithet 'libel' than" to "other 'mere labels' of state law."  *Id*. at 269.  It emphasized that any "repression of" any "expression" criticizing public officials "must be measured by standards that satisfy the First Amendment."  *Id*.

"The question" in *Sullivan* was "whether" criticism of a public official "forfeits" constitutional "protection by the falsity of some of its factual statements and by its alleged defamation."  *Id*. at 271.  Clearly, "neither factual error nor defamatory content suffices to remove the constitutional shield from criticism of official conduct," and even "the combination

15

of the two elements is no less [constitutionally] inadequate." *Id*. at 273. Neither "error" that causes "[i]njury to official reputation" nor "factual error" (nor both) can afford any government authority any "more warrant for repressing speech that would otherwise be free." *Id*. at 272.

The U.S. Supreme Court repeatedly was "careful to note" the unconstitutionality of "action which encroaches on freedom" to criticize "public men" because they are essentially "public property," and "discussion cannot be denied and the right, as well as the duty, of criticism must not be stifled." *Id.* at 268. The Court even emphasized that "debate on public issues should be uninhibited, robust, and wide-open, and" it "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id*. at 270. Speech may legitimately resort "to vilification of men who have been, or are, prominent," including judges. *Id*. at 271.

> Where *judicial* officers are involved [ ] concern for the dignity and reputation of the courts does not justify the punishment as criminal contempt of *criticism of the judge or his decision*. This is true even though the utterance contains 'half-truths' and 'misinformation.' Such repression can be justified, if at all, *only* by a *clear and present danger of the obstruction of justice*. [ J]udges are to be treated as 'men of fortitude, able to thrive in a hardy climate.' ... Criticism of their official conduct does not lose its constitutional protection merely because it is effective criticism and hence diminishes their official reputations.

*Id*. at 272-73 (citations omitted) (emphasis added).

Courts must ensure that any prohibition or punishment of speech or petitioning does not merely and illegally "reflect the obsolete doctrine that the governed must not criticize their governors." *Id.* at 272. It is not enough that someone might take offense at any criticism of judges' official conduct. The U.S. Supreme Court repeatedly has emphasized that "judges are to be treated" as "men of fortitude, able to thrive in a hardy climate." *Id.* at 273 (citation omitted). So "surely the same must be true of other government officials." *Id. See also Bridges v. California*, 314 U.S. 252, 270-71 (1941):

16

> The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of [Americans and] American public opinion. For it is a prized American privilege to speak one's mind . . . on all public institutions. [Any] enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect. [Certainly,] disorderly and unfair administration of justice, is more plausibly associated with restricting publications which touch upon pending litigation.

Eight months after deciding *Sullivan*, the U.S. Supreme Court again emphasized that all government officials must bear in mind that "speech concerning public affairs" is "the essence of self-government. The First and Fourteenth Amendments embody" our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Garrison v. State of La.*, 379 U.S. 64, 74-75 (1964) quoting *Sullivan*, 376 U.S. at 270.

"The public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation." *Id.* at 77.

In *Garrison*, an attorney asserted extrajudicial statements publicly impugning the work ethic of eight judges. *See id.* at 66 ("inefficiency, laziness, and excessive vacations" and "impugning their motives"). The attorney even implied that the judges' conduct might be criminal. *See id.* ("The judges have now made it eloquently clear where their sympathies lie in regard to aggressive vice investigations . . . This raises interesting questions about the racketeer influences on our eight vacation-minded judges.").

The Supreme Court emphasized that "[w]here criticism of" any "public officials is concerned," there can be "no merit in" any "argument that criminal libel statutes" (or any rule

regulating attorney conduct) "serve interests distinct from those secured by civil libel laws, and therefore should not be subject to the same limitations." *Id.* at 67. *Any* "use of libel laws, civil or criminal, to impose" any type of "sanctions upon" any "criticism of the official conduct of public officials" must not violate "*constitutional* limitations protecting freedom of expression. Whether the libel law be civil or criminal, it must satisfy relevant *constitutional* standards." *Id.* n.3 (emphasis added).

"Truth may not be the subject of" any type of "either civil or criminal sanctions where discussion of public affairs is concerned." *Garrison* at 74. Courts must apply "the *New York Times* rule, which absolutely prohibits punishment of truthful criticism." *Id.* at 78. Moreover, "even where the utterance is false, the great principles of the Constitution which secure freedom of expression in this area preclude attaching" any "adverse consequences to any except the knowing or reckless falsehood." *Id.* at 73.

"The interest of the public here outweighs the interest of" Judge Garaufis "or any other individual. The protection of the public requires not merely discussion, but information." *Sullivan,* 376 U.S. at 272. Judges can "claim no talismanic immunity from constitutional limitations." *Id.* at 269. Speech criticizing even judges "must be measured by standards that satisfy the First Amendment." *Id.*

"The constitutional guarantees" of freedom of speech and petitioning "require" a "federal rule that" any attempt to punish or prohibit any criticism of any "public official" for "his official conduct" because such criticism purportedly was false requires proof, first, "that the statement" was a "falsehood," and second, that it "was made" with "actual malice," *i.e.*, "knowledge that it was false or with reckless disregard" for its falsity. *Id.* at 279-80. To prohibit or punish such speech or petitioning, the government must prove "a clear and present danger of the obstruction

18

of justice." *Id.* at 273.  Each material fact must be proved with the "convincing clarity which the constitutional standard demands." *Id.* at 285-86.

The "First Amendment mandates a 'clear and convincing' standard" of proof of each fact material to showing that danger of the obstruction of justice is clear and present. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The "clear-and-convincing-evidence requirement must be considered by a court" even when "ruling on a motion for summary judgment" whenever "*New York Times* applies." *Id.* at 244.

In any matter for which "the First Amendment mandates" a "clear and convincing" standard, the U.S. Constitution bars courts from applying a lesser standard regardless of the procedural posture or the nature of the matter. *Id.* at 252.  When the U.S. Constitution requires that facts be "proved by clear and convincing evidence," it is plainly unconstitutional to prove them "by a" mere "preponderance of the evidence." *Id.* at 247.  Under the First Amendment, any tribunal addressing criticism of the official conduct of a "public figure" always "must bear in mind the actual quantum and quality of proof necessary to" comply with "*New York Times*." *Id.* at 254.  "For example, there is no genuine issue" for trial regarding a material fact when (as here) "the evidence presented" by Judge Garaufis is "of insufficient caliber or quantity to allow a rational finder of fact to find [such fact] by clear and convincing evidence." *Id.*

Judge Garaufis repeatedly has lied and committed crimes to conceal and help DOL and DOJ employees criminally conceal evidence of two phrases purportedly in Powers' email.  Judge Garaufis cannot show that Jordan asserted anything about Judge Garaufis that was false.

Judge Garaufis has not and cannot show that any assertion by Jordan was false or contrary to federal law.  Instead, Judge Garaufis repeatedly emphasizes that he deceitfully and criminally merely pretended to have the power to "reject" the controlling legal authorities

19

(federal law, Supreme Court and Second Circuit precedent and the Constitution) that Jordan presented. Four times, Judge Garaufis emphasized merely that he "rejected" controlling legal authority. Order at 6, 9, 10. Two clear examples illustrating exactly how Judge Garaufis criminally pretended to have the power to reject controlling federal law, the Supremacy Clause and the Due Process Clause were provided above.

First, Judge Garaufis pretended to have the power to reject clear commands or prohibitions in Rule 56, the Federal Rules of Evidence and the Constitution. He fraudulently used his own and DOJ and DOJ employees' mere vague hearsay (unsupported by any testimony by any competent witness and clearly violating Plaintiff's rights under clear language in Rule 56 and Federal Rules of Evidence) to abridge Plaintiff's right to petition for redress of grievances by terminating her suit with a fraudulent summary judgment for the DOL. *See* pages 5-6, above. *Cf.* page 12, above (quoting the Constitution and 18 U.S.C. §§ 241, 242).

Second, Judge Garaufis pretended that he could conceal and help conceal the evidence of whether the vague hearsay about the content of Powers' email were lies or deceitful misrepresentations. *Compare* pages 6-8, above (Judge Garaufis's blatant misconduct) *with* pages 8 and 12, above (controlling provisions of FOIA, Second Circuit precedent and the Constitution that Judge Garaufis pretended to have the power to reject).

Not once did Judge Garaufis even contend that he had the *power* to reject any provision of any federal statute, any federal rule, the Constitution or any precedent that Jordan presented. Judge Garaufis clearly lacked any such power, and he clearly knew he lacked it.

Judge Garaufis's pretenses to have the power to reject controlling legal authority were nothing more or less than intentional crimes and violations of the Constitution and his oaths of office. The only way Judge Garaufis can succeed in his crimes and violations of the

Constitution, federal law and his oaths of office is to cause other federal judges and court employees to join him in his criminal conspiracy with DOJ attorneys.

Judge Garaufis should have the decency and commonsense not to involve other judges (*e.g.*, on the Second Circuit) or this Court's disciplinary apparatus in his criminal efforts to intimidate and injure Plaintiff and her counsel.  Involving other government employees in Judge Garaufis's criminal conspiracy will not serve even Judge Garaufis's purposes.  Such misconduct will not preclude further litigation.  It will ensure and engender further litigation.  *Cf.* 42 U.S.C. § 1985; 18 U.S.C. § 1961.

Clearly, "racketeering activity" includes "wire fraud," "obstruction of justice" and "retaliation against a witness" or "victim."  18 U.S.C. § 1961(1) citing 18 U.S.C. §§ 1343, 1512, 1513.  A "pattern of racketeering activity" requires only "two" such acts "within ten years."  18 U.S.C. § 1961(5).  Judge Garaufis and DOJ and DOJ employees have engaged in much more than two instances of racketeering activity.  "Any person injured in his business or property by reason of" such racketeering activity "may sue therefor" and "shall recover threefold" his "damages" plus "the cost of the suit, including a reasonable attorney's fee."  18 U.S.C. § 1964(c).  Jordan has four years to accumulate and ascertain damages and file claims.  *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987).

Judge Garaufis should have the decency and commonsense to simply order the DOL and DOJ to release the portions of Powers' email that show any privilege notation (*e.g.*, "Subject to Attorney Client Privilege") and any non-commercial words expressly requesting advice, input or review (*e.g.*, "please advise regarding" or "please review and provide input").  Judge Garaufis *never* had any power to "reject" the controlling legal authority requiring him to do so and requiring him to deny summary judgment for the DOL—and Judge Garaufis *always* knew that.

21

DATED:  July 29, 2021

Respectfully submitted,
s/ Jack Jordan
Jack Jordan
3102 Howell Street
North Kansas City, Missouri 64116
jack.jordan@emobilawyer.com
816-746-1955
Counsel for Plaintiff